IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BROTHERTON,

   Petitioner,

v.

CYNTHIA CARTER,

   Respondent.

Civil Action No.: 1:23-cv-02187-JRR

## MEMORANDUM OPINION

The court has before it Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 5, the "Motion") filed in response to Petitioner David Brotherton's Petition for Writ of Habeas Corpus (ECF No. 1, the "Petition"); as well as Petitioner's supplemental petition (ECF No. 9) and the Respondent's response to same (ECF No. 10), which seeks dismissal of the supplemental petition  The court has reviewed the parties' submissions and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Motion, construed as one for summary judgment, shall be denied as to the Petition at ECF No. 1; Respondent's motion to dismiss the Supplemental Petition shall be granted.

I.     **BACKGROUND**

Petitioner Brotherton is serving a 130-month term of incarceration for conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine.  (ECF No. 5-1 at 1, ¶ 5.)  His projected release date is October 5, 2025.  *Id*.  Petitioner arrived at Federal Correctional Institution Cumberland ("FCI-Cumberland") on November 25, 2021.  (ECF No. 5-1 at 3, ¶ 6.)  Prior to his arrival, Petitioner was confined to FCI-Edgefield in Edgefield, South Carolina where he received two disciplinary charges.  *Id*.; *see also* ECF No. 5-2 at 3-4.

A.      **October 8, 2018 Incident**

On October 8, 2018, Incident Report 3178775 was issued following a search of Brotherton's cell, which he shared with another inmate. (ECF No. 5-2 at 3, ¶ 4.) During the search, one small orange colored strip of suboxone was found. *Id*. The following day, Petitioner received the Incident Report, an investigation was conducted, and the matter was referred to a Unit Discipline Committee ("UDC"). *Id*. at ¶ 5. Petitioner maintained that the contraband did not belong to him and stated that he was "in the kitchen when it was found." *Id*. at ¶ 6.

On October 23, 2018, following a review by the UDC, the incident was referred to the Disciplinary Hearing Officer ("DHO"). (ECF No. 5-2 at 3, ¶ 6.) Petitioner received notice of the DHO hearing and was advised of his rights. *Id*. On November 13, 2018, Petitioner was afforded a hearing at which he admitted to the charge. *Id*. at ¶ 7. DHO Davis concluded there was sufficient evidence to support a guilty finding and Petitioner was sanctioned with the loss of 41 days of Good Conduct Time ("GCT"), as well as the loss of commissary and email privileges for six months. *Id*. Respondent avers that a copy of the DHO report was delivered to Petitioner on November 26, 2018. *Id*. Petitioner, however, denies he received a copy of the report. (ECF Nos. 1 and 8.) Petitioner further asserts that the staff stated that there was no report on file. (ECF No. 1.)

B.      **October 30, 2018 Incident**

On October 30, 2018, Incident Report 3186530 was issued after staff became aware that Petitioner and his cellmate had been in a physical altercation. (ECF No. 5-2 at 4, ¶ 8.) The altercation occurred on October 24, 2018, in the Special Housing Unit ("SHU"), cell number 235, where Petitioner was housed. *Id*. On November 1, 2018, Petitioner received notice of his DHO hearing rights. (ECF No. 5-2 at 4, ¶ 9; ECF No. 5-2 at 18, Incident Report; ECF No. 5-2 at 21, Notice of Discipline Hearing Before the DHO.)

2

Petitioner told the UDC: "I lost my temper" and "I snore and I can't help it." *Id*. at 18. At the direction, and under the signature, of the UDC Chairman, the matter was referred to DHO for "further disposition" due to the "seriousness of the charge." (ECF No. 5-2 at ¶¶ 10, 18.)

On November 13, 2018, Petitioner was afforded a hearing before DHO Davis, who found the evidence sufficient to support a finding of guilt. Petitioner was sanctioned with disallowance of 27 days of GCT, 30 days in the SHU, and loss of visitation for six months. (ECF No. 5-2 at 4, ¶ 11; ECF No. 5-2 at 16, Chronological Disciplinary Record.) According to Respondent, Petitioner received a copy of the DHO report on November 26, 2018. *Id*. at ¶ 12. Petitioner asserts he was not provided a copy of the DHO Report or hearing outcome.

### C. Administrative Remedies

According to Respondent, Petitioner has filed three Administrative Remedies during his incarceration, two of which (both DHO appeals) pertain to the issues set forth in the Petition. (ECF No. 5-1 at 4, ¶ 8; ECF No. 5-2 at 15.) The first DHO appeal was filed on March 5, 2019, with the Southeast Regional Office; the next day it was rejected. (ECF No. 5-1 at 4, ¶ 8.a and 15.) The second DHO appeal was received by the Central Office on April 9, 2019. *Id*. at ¶ 8.b and 15. On May 2, 2019, the second appeal was rejected with the following advisement: "If staff provide a memo stating late filing was not your fault, then resubmit to the level of the original rejection." *Id*. The court construes (at this time) that the appeals were rejected as untimely.

In response to the Motion, Petitioner relies upon the December 2018 FCI-Cumberland Admission and Orientation Handbook which, *inter alia*, sets forth the Federal Bureau of Prisons ("BOP") procedure applicable to DHO disciplinary hearings and Appeals of Disciplinary Actions, as well as pertinent inmate rights. (ECF No. 8-1 at 2.) According to the Handbook, the DHO may only hear matters referred by the UDC. Further, an inmate subject to a disciplinary charge is to

receive no less than 24 hours' written notice of the DHO proceeding; is entitled to be present, to be represented by a staff member, to present evidence including witness testimony, and may make a statement. *Id.* The DHO is required to "give the inmate a written copy of the decision and disposition, ordinarily within 15 days of the decision." *Id*.

To appeal a disciplinary action, inmates are directed to the Administrative Remedy Program. (ECF No. 8-1 at 2.) According to the Admission and Orientation Handbook, the Warden conducts an initial review of the UDC's findings and decisions of the DHO are reviewed by the Regional Director through the Administrative Remedy Program. *Id*. Appellate review is limited to: (1) whether the UDC or DHO substantially complied with applicable regulations; (2) whether the UDC or DHO based its decision on facts and, where there is conflicting evidence, whether the decision is based on the greater weight of evidence; and (3) whether an appropriate sanction was imposed. *Id*. An Administrative Remedy must be filed with the Regional Director within 20 days of the DHO's decision. 28 C.F.R. § 542.15(a). If an inmate is not satisfied with the Regional Director's response, he may appeal to the General Counsel, which must be submitted within 30 days following the Regional Director's signed response. *Id*. Appeal to the General Counsel is the final administrative appeal. *Id*.

Petitioner asserts he was denied due process because he was not provided the DHO reports as required by BOP policy, which in turn obstructed his ability to seek appellate review of the "incidents." (ECF No. 8 at 1.) As relief, Petitioner seeks restoration of disallowed GCT and reinstatement[1] of his "low" security level classification. (ECF No. 1.)

---

[1] Respondent challenges Petitioner's entitlement to this form of relief (even if he prevails on the merits of the Petition) on the basis that Petitioner was never classified as a low security risk (which he concedes), Petitioner has not pursued available administrative relief as to this issue, and, in any event, security classification is not subject to judicial designation. ECF Nos. 5 and 10. The court agrees. *See also infra,* Section III.D.

## II.     STANDARD OF REVIEW

Respondent's Motion seeks dismissal of the Petition or, in the alternative, summary judgment.[2] "A motion with this caption implicates the court's discretion" under Federal Rule of Civil Procedure 12(d). *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Rule 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at *8 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods*

---

[2] Respondent seeks dismissal of the Petition pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies. (ECF No. 5 at 11.) "Exhaustion of administrative remedies for a § 2241 petition, however, is not a jurisdictional requirement." *Johnson v. United States*, No. CV TDC-16-3468, 2017 WL 2964801, at *3 (D. Md. July 11, 2017) (citing *Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004)).

5

*Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission to the finder of fact for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Further, in undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party – here, Petitioner. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Critically, on a Rule 56 motion, the court "must not weigh evidence or make credibility determinations." *Foster v.*

6

*Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

Here, the parties were on notice that the court may resolve the Motion under Rule 56 because Respondent filed the Motion in the alternative and attached exhibits to the Motion. Further, Petitioner referred to the Motion as one for summary judgment in his Response to the Motion and attached an exhibit for the court to consider. (ECF No. 8-1.) In addition, Petitioner neither requests discovery nor filed a Rule 56(d) affidavit. Accordingly, the court will construe the Motion as one for summary judgment.

**III.     ANALYSIS**

    **A.     Exhaustion of Administrative Remedies**

As a prisoner, Petitioner is required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, to exhaust administrative remedies prior to filing a claim in this court. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 578 U.S. 632, 635 (2016). In particular, the Supreme Court rejected a "special circumstances" exception to the exhaustion requirement. *Id*. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008), *see also Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (plaintiff did not fail to exhaust administrative remedies where none were available to him due to ongoing IID investigation).

The Supreme Court held in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532

U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Petitioner is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, Petitioner maintains he could not file an appeal of either finding without a copy of the relevant DHO decision, effectively making the Administrative Remedy Procedure unavailable to him. (ECF Nos. 1 and 8.) Specifically, Petitioner contends that he "requested the (D.H.O.) report prepared by the Disciplinary Hearing Officer to no avail so he could not appeal." (ECF No. 1.) Through the Declaration of Michael Facey, BOP Discipline Hearing Administrator at the Mid-Atlantic Regional Office (ECF No. 5-2), Respondent asserts it provided Petitioner copies of the

DHO decisions in Petitioner's disciplinary proceedings. In support of this statement, Respondent cites to Exhibit E to the Facey Declaration. Exhibit E (ECF No. 5-2 at 16) is a computer generated Chronological Disciplinary Record documenting Petitioner's infractions and the outcomes of same, but does not contain any indication or suggestion that Respondent provided Petitioner written notice of the DHO decisions in his disciplinary proceedings. The court notes that Petitioner did not file an appeal with the Regional Director within the requisite time frame and his appeals were rejected (apparently) as untimely – not for failure to provide required or supportive documentation. However, absent receipt of written notice of the DHO outcome in each of his disciplinary proceedings, it is unclear how Petitioner was effectively on notice that his appeal clock had begun. Therefore, whether Respondent provided proper, effective notice of the DHO outcomes generates a dispute of material fact as to exhaustion of administrative remedies. *See Hill v. Haynes*, 380 F. App'x 268, 273-74 (4th Cir. 2010) (finding genuine issues of material fact regarding exhaustion of administrative remedies where the plaintiff provided specific allegations regarding the defendants' hindering his ability to exhaust); *Gbikpi v. Atkinson*, No. 5:14-CT-3182-FL, 2015 WL 6744038, at *2 (E.D.N.C. Nov. 4, 2015) (finding that the plaintiff's allegation that he was not provided the proper forms created a genuine issue of material fact as to whether the prison officials prevented him from exhausting his administrative remedies). Therefore, the court will deny the Motion at this time as to Respondent's argument that the Petition is subject to dismissal for failure to exhaust administrative remedies.

  **B.**   **Statute of Limitations / Doctrine of Laches**

Respondent further seeks dismissal of the Petition because it is untimely. (ECF No. 5 at 16.) Respondent argues that the Petition is subject to a one-year statute of limitations as set forth

in 28 U.S.C. § 2244(d).[3]  *Id.*  Respondent directs the court's attention to *Wilson v. Wrigley*, No. CVF0700142LJODLBHC, 2007 WL 1378024, at *1 (E.D. Cal. May 10, 2007), *report and recommendation adopted as modified,* No. 107CV00142LJODLBHC, 2007 WL 2900216 (E.D. Cal. Oct. 4, 2007).

In *Wilson*, the petitioner filed a petition and a motion for leave to file an amended and supplemental petition. 2007 WL 1378024, at *1.  In the motion to amend, the petitioner challenged the outcome of a disciplinary hearing.  *Id.*  The court relying on 28 U.S.C. § 2244(d)(1)(D) explained that the petitioner "had one year from that date, absent applicable tolling, in which to file his federal petition for writ of habeas corpus." *Id.* at *2.  The court further relied on *Shelby v. Barlett*,[4] and explained "that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied." *Id.*  Therefore, because the petitioner indicated that his administrative appeal was denied in 1996, and he did not file his petition until 2007, the Magistrate Judge recommended that the court deny the motion to amend because the petitioner's challenge to the disciplinary hearing was barred by the statute of limitations.  *Id.*

Importantly, however, the Magistrate Judge's recommendation was modified, in part, on the statute of limitations issue.  *Wilson v. Wrigley*, No. 107CV00142LJODLBHC, 2007 WL 2900216, at *1 (E.D. Cal. Oct. 4, 2007).  In the order adopting the Magistrate Judge's findings and recommendations as modified, the court noted:

> With regard to Petitioner's challenge to his 1995 disciplinary hearing, Petitioner contends that he has been attempting to appeal that decision, however, "the Bureau of Prisons would not properly address his claims and supporting issues of facts, thereby depriving him available administrative relief." Based on Petitioner's allegations raised in his objections, the Court cannot determine whether his challenge to the 1995 disciplinary hearing is barred by

---

[3] 28 U.S.C. § 2244(d) provides in part: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."
[4] 391 F.3d 1061 (9th Cir. 2004).

11

> the statute of limitations, and it shall therefore proceed forward. Consequently, Petitioner's motion for leave to file a supplement to the petition, filed on March 28, 2007, shall be granted, as it addresses the claim regarding his 1995 disciplinary hearing.

*Id.* (internal citations omitted).

Like *Wilson*, and as discussed in Section III.A, *supra*, there is a genuine dispute of material fact as to whether Petitioner received written notice of the DHO outcome in each of his disciplinary proceedings. Accordingly, at this stage, the court declines to dismiss or enter summary judgment in favor of Respondent on this issue.

Respondent additionally seeks dismissal of the Petition on the basis of the doctrine of laches. (ECF No. 5 at 17-19.) The doctrine of laches "is one of the affirmative defenses generally allowable under FED. R. CIV. P. 8(c), although it is properly relevant only where the claims presented may be characterized as equitable, rather than legal." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990); *see also Murphy v. Liberty Mutual Insurance Co.*, 478 Md. 333, 343 n.4 (2022) ("The doctrine of laches is a judicially-developed doctrine applicable to equitable claims in civil cases under which a court will decline to consider that claim when there has been an unreasonable delay on the part of the plaintiff in asserting it, to the prejudice of the defendant.") (citing *State Center, LLC v. Lexington Charles L.P.*, 438 Md. 451, 585-87 (2014)). "Laches imposes on the defendant the ultimate burden of proving '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *White*, 909 F.2d at 102. (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). "[W]hether laches bars an action depends upon the particular circumstances of the case." *Id.*

Respondent directs the court's attention to *Collins v. Warden*, No. 3:20-CV-372-JD-MGG, 2021 WL 2785048 (N.D. Ind. June 21, 2021). There, the petitioner filed a habeas petition twenty years after his disciplinary hearing. 2021 WL 2785048, at *1. In dismissing the petition as

untimely, the *Collins* court explained that the petitioner offered no explanation as to why he waited twenty years to initiate the case. *Id.* at *1. In addition, the passage of time substantially limited the respondent's "ability to defend this case because none of the correctional staff associated with the disciplinary proceedings remain employed with the State of Indiana." *Id.*

As an initial matter, the passage of time in the instant case is not nearly as significant as in *Collins*. The incidents here occurred in October and November of 2018, and Petitioner filed the instant Petition on August 10, 2023. Moreover, in contrast to *Collins*, Petitioner offers an explanation as to why he waited to initiate the case—he contends that he did not receive notice of the DHO reports/outcomes. (ECF No. 1.) In addition, as discussed above, there remains a dispute as to whether Petitioner received the DHO reports. The court declines to dismiss the Petition on this basis.

### C. DHO Hearing Outcomes

Respondent argues that even if the court declines to dismiss the Petition on procedural grounds, the court should dismiss the Petition on the merits. (ECF No. 5 at 20.)

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have

non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66. There is no constitutional right to confront and cross-examine witnesses, or to retain or be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-505 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The DHO was free to discredit Petitioner's denial of the charges against him and instead to believe the allegations and evidence against him.

Importantly, federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Here, Petitioner complains he "contested these incidents to no avail." (ECF No. 1.) While Petitioner does not allege that he did not receive notice of the charges, was denied the opportunity to call witnesses, to present evidence, or was otherwise unable or disallowed the opportunity to present a defense, Petitioner maintains "that the failure to provide him the Disciplinary hearing offices reports per BOP policy denied him Due Process as he was obstructed from appealing the incidents at his prison." (ECF No. 8 at 1.) Moreover, as set forth above, Petitioner has generated a dispute of material fact as to whether he was provided copies of the DHO written decisions or

written notice of the disciplinary action taken as to each incident. While Petitioner's chief complaint as to the DHO hearings bears upon the substantive correctness of the outcomes and not their procedure, in light of the material dispute of fact as to whether Respondent provided Petitioner with the requisite written notice of the DHO decisions and reasons for the disciplinary action taken, the court declines to dismiss the Petition or enter summary judgment in favor of Respondent on this issue.

### D. Supplemental Petition

Through his Supplemental Petition, Petitioner asserts that the First Step Act ("FSA") scoring tool differs from the custody level tool, and that the former violates his constitutional rights under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution. (ECF No. 9 at 2.) He states that he is being denied release based on the infractions that are the subject of this Petition; that the BOP is improperly construing his criminal offense as a violent offense; and the BOP is depriving prisoners of their liberty based on the erroneous conclusion that certain offenses are violent – thereby denying them application of FSA credits to their sentence. *Id*. at 3-4. Petitioner insists that he has been denied "low" level custody because of the disciplinary infractions he received. *Id*. at 1-2. Respondent objects to Petitioner's attempt to "supplement" his Petition in this way. (ECF No. 10.) The court agrees with Respondent.

It is the responsibility of the United States Attorney General, the Department of Justice, and the BOP to compute sentences of prisoners committed to the custody of the United States or the District of Columbia, and to apply jail credit when it is due. 18 U.S.C. § 3624; *see Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir. 1985)); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979). After a federal district court sentences a federal offender, the Attorney General, through the BOP, is responsible for

administering the offender's sentence.  18 U.S.C. § 3621(a); *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also United States v. Stroud*, 584 F. App'x 159, 160 (4th Cir. 2014) (holding Attorney General, through BOP, responsible for computing sentencing credit for time in detention prior to sentencing).  In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the BOP facilities.  *See* 28 C.F.R. §§ 542.10, *et seq*.

Here, Petitioner's supplemental petition asserts that he is currently pursuing administrative remedies with respect to application of FSA credits to his sentence. (ECF No. 9 at 1.)  Until that process has been exhausted, he may not pursue relief in this court on that issue.  The court will not consider the improperly raised claim in Petitioner's supplemental petition; to the extent procedurally necessary, it shall therefore be dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the Motion, construed as a motion for summary judgment, is DENIED as to the Petition; Respondent's motion to dismiss Petitioner's supplemental petition is GRANTED.  A separate Order follows.

/S/

April 8, 2024

Julie R. Rubin
United States District Judge